## WILLIAMS vs. TROOP, Adm'r &c., and others.

On an application to discharge a decree of foreclosure &c., on the ground that the amount due upon the decree has been fully paid, the court may properly direct the question of payment to be tried by a jury.

In case of a decree foreclosing a mortgage upon lands belonging to the estate of a decedent, the administrator cannot, for the purpose of preventing a sale under the decree, make an agreement which will bind the estate, for the payment of interest at a higher rate than that allowed by law in such cases.

If payments are made by the administrator "to be applied upon the decree," the court will not apply any part of them upon the personal liability (if any) which the administrator incurred by his agreement.

It is not necessary that an administrator should take out a license for the sale of spirituous liquors, to enable him to dispose of such liquors belonging to the estate, in payment of a debt or otherwise.

The administrator in this case delivered to the plaintiff in the decree a quantity of goods, with a bill of the same running to him as such administrator. *Held*, that in the absence of other evidence upon the subject, it must be presumed that the goods were property of the estate.

APPEAL from the Circuit Court for *Sauk* County.

On the 16th of January, 1855, this cause, wherein *Calvin G. Williams* was plaintiff, and Ann Garrison, *Ozias V. Troop*, administrator of the estate of Andrew Garrison, deceased, and in his own behalf, the unknown heirs of Andrew Garrison, and two other persons, were defendants, was pending in said circuit court. On that day a stipulation was entered into betweeen the plaintiff, on the one part, and said *Troop* in his own behalf and as said administrator, and the said Ann Garrison, on the other part, as follows: It is stipulated that $195 was due on the mortgage sought to be foreclosed in said action; that $205 was due on another bond and mortgage mentioned in the complaint therein, and constituted a lien upon the land next in order to the former; that "the usual decree" might be made for the sale of the mortgaged premises, to pay the amount first named, and costs of sale, and for the payment out of the surplus of the second amount named. It is further stipulated that upon the 1st of June, 1855, the defendants should pay the plaintiff $100; that upon the 1st of June, 1856, they should pay $150, together with interest from the date of the decree upon both the sums which were to be included therein,—after deducting the $100 to be paid as aforesaid in 1855—at the rate of 12 per cent. per annum; that they should also pay the further sum of $150 November 1, 1856, with interest thereon at 12 per cent. from the date of the payment last aforesaid; that said payments should be applied "first in payment of the bond and mortgage last above mentioned, to-wit, the one to be paid

JUNE TERM, 1863.                    465

Williams vs. Troop, adm'r &c., et al.

from the surplus moneys," and next upon the mortgage sought to be foreclosed in this action; that upon condition that such payments should be so made, the plaintiff would take no steps towards selling the mortgaged premises under the decree, but in case of default in any such payment, whether of principal or interest, the plaintiff should have the same right to sell under the decree as he would have had if such stipulation had not been entered into; that the decree should be in the usual form, except that the defendants should not be required to pay any costs but those which might accrue in consequence of a sale; and that it should not mention the times and conditions of payment above stated, but in that respect should be in the usual form.

On the 13th of February, 1855, a decree was entered in the cause in pursuance of the above stipulation, the bill being taken as confessed against "the unknown heirs of Andrew Garrison, deceased." The decree was in the usual form, and provided for the payment out of the proceeds of the sale of the mortgaged premises, of interest upon said several sums of $195 and $205, at 7 per cent. from the date of the decree.

In July, 1862, said *Troop* moved the court that said decree be discharged of record, on the ground that it had been fully paid. This motion was supported by his affidavit and opposed by the plaintiff upon the affidavits of himself and one Davis. The affidavit of *Troop* stated that he had paid upon the decree July 9, 1855, $100; November 29, 1860, $347; and November 9, 1861, $120; all of which sums were to be and were applied upon said decree, except a sum not exceeding $30, out of the last payment, which, it was agreed, should be applied for taxes and tax certificates; that the decree allowed interest at only seven per cent.; that by said payments the decree was fully paid; that the plaintiff had nevertheless caused the premises described in the decree to be advertised for sale, &c. The affidavit of the plaintiff stated that the decree was rendered upon a stipulation between the affiant

and the defendants (on file in said cause) by the terms of which the affiant was not to sell the mortgaged premises under the decree, upon condition that the defendant would make certain specified payments, and would pay on the whole sum adjudged to be due, interest at twelve per cent. per annum; that in pursuance of the agreement, affiant forebore to sell the premises up to April, 1862; that the payment made by the defendant July 9, 1855, was, in pursuance of said agreement, to apply in payment of said twelve per cent. interest then due, and the remainder on the judgment; that the $347 paid in November, 1860, was, by express agreement, to apply in payment on said interest at 12 per cent., except after October 15th, 1860, after which time the interest was to be *ten* per cent. per annum; that the defendants neglected to pay the interest or installments as they were to have been paid; that the defendant *Troop*, before the interest was reduced to ten per cent., promised the affiant repeatedly to pay him twelve per cent. interest on such installments of interest as were due and unpaid; that the affiant had incurred expenses in various ways at the request of said *Troop*, amounting to $49, which *Troop* promised to pay him; that affiant held a tax title on which he claimed $37.20, which was the amount it had cost him; that the payment of $120, November 9, 1861, as claimed in *Troop's* affidavit, was really thirty gallons of brandy, sold and delivered on that day by defendant to the affiant at Baraboo in said county of Sauk, and accepted by affiant in full satisfaction of said $49 expense money, and interest upon interest past due; that there was no other consideration for said brandy, and it was in no way to apply upon said decree; that the defendants, at the time of said sale of brandy, had no license to sell the same, &c.; and that there was still due to affiant on the decree over $200.—The affidavit of Davis stated that the affiant knew that the $120 payment mentioned in *Troop's* affidavit, was thirty gallons of brandy; that said brandy was to be in full payment for interest upon installments of interest that had then become

due from the defendants to the plaintiff on said decree, for expenses incurred in their behalf and other matters, amounting to $120; and that no part of the same was to apply on said judgment or decree.—The court, on the hearing of the motion, ordered "that the question of the alleged payment of the decree ＊ ＊ ＊ should be tried before a jury" at its next term, "upon the allegations contained in said affidavits;" and that meanwhile proceedings by the plaintiff under the decree be stayed. When the matter came on to be heard at the next term of the court, the plaintiff objected to the trial of the matters in issue before a jury, but the objection was overruled. On the trial before the jury, said *Troop*, as a witness on his own behalf, produced two receipts which were given in evidence. They were both signed by the attorney for the plaintiff, and stated that they were for moneys received of *Troop* to apply on said decree. The first, dated July 9, 1855, was for $100; and the second, dated November 29, 1860, was for $347. The second receipt contained also these words: "To apply first in payment of the notes and mortgage upon which surplus is claimed; then after that on the balance, or other claim." The witness then testified that on the 9th of November, 1861, he paid the plaintiff $120 over and above the amounts mentioned in said receipts. He also testified that there were three or four heirs of the estate of Andrew Garrison, deceased, and that there never was any stipulation between the parties except the one on which the decree was entered. On cross-examination he said: "The payment of $120 was made by giving the plaintiff thirty gallons of brandy at $4 per gallon. This payment was to apply on the amount of the decree and interest at 7 per cent.; and not upon anything else. It was in full payment of the amount due upon the decree. The brandy was paid at Baraboo. I had not at that time any license to sell spirituous or intoxicating liquors. The claim of plaintiff on account of tax title was paid by me in the $347 paid November 29, 1860; it amounted to about $28. No part of the

$120 payment was to apply on the expenses the plaintiff had incurred on my behalf, nor in payment of interest in excess of 7 per cent. on the decree, nor in payment of interest upon accrued interest. I had made the plaintiff oral promises to pay him compound interest. I never made any agreement with him in writing to pay a greater rate of interest than 7 per cent. in consideration of forbearance to enforce the decree. I did not, in response to a statement of the defendant Mrs. Garrison (now Taylor) to Mr. Davis, that they had agreed to pay 30 gallons of brandy as interest and compound interest on the decree —say that I should not object to it; I said nothing to that effect."—One Taylor, as a witness for the plaintiff, then testified that he was present when the brandy was delivered; it was left at Mr. Davis' house. Davis was not at home. *Mr. Troop* asked for a receipt applying it on the decree. The plaintiff replied, "You are not smart enough for that." On cross-examination, he said that the plaintiff seemed to be in a great deal of perplexity how to make a receipt so as to avoid usury, and the last he knew of the matter they had not agreed on it; this was after the brandy was delivered.—The defendant *Troop* having rested, the plaintiff introduced in evidence the decree in this cause, the stipulation above described, and the affidavits of himself and Davis, the substance of which is above given. Said Davis was then examined as a witness for the plaintiff. *Question:* "Did the defendant *Troop*, at the Western Hotel in Baraboo, after the making of the agreement with the plaintiff in regard to the payment or delivery of the brandy, in response to a statement of Mrs. Garrison (now Taylor) to you, that they had agreed to pay thirty gallons of brandy in payment of the interest and compound interest on the decree, say 'I shall not object to it'?" *Answer:* "He did say so. He promised the plaintiff that he would pay him his expenses incurred in looking after the decree." *Question:* "Did you ever hear *Troop*, at any time prior to the payments being made, or between the times of such payments, promise the plaintiff

to pay him a greater rate of interest on the decree than 7 per cent. ? " Objected to on the ground that an administrator could not be bound by such an agreement; and objection sustained. *Question:* " Do you know whether *Mr. Troop* made or applied any part of the payments before referred to, on the interest upon the decree, at a greater rate than 7 per cent., and between that and the rate allowed by law." Objected to, and ruled out. On cross-examination, the witness said that he was not present when the brandy was delivered, nor when the bargain was made about it.—The plaintiff was then examined as a witness on his own behalf. *Question:* " Was either of the payments, or any part of them, prior to the brandy payment, applied or to apply, by express stipulation between you and *Troop*, in payment of interest on the decree at a rate exceeding 7 per cent. and within the legal rate of interest ? " Objected to and ruled out, on the ground that an administrator could not pay funds in that way. The plaintiff then introduced in evidence the following instrument in writing, and testified that it was delivered to him by *Troop* at the time of the delivery of the brandy : " Calvin G. Williams, Esq. To O. V. Troop, Administrator of the estate of A. Garrison. 30 gallons brandy, at $4, $120.00. Settlement in full for forbearance of stipulation made January 16, 1855. Leaving stipulation part unsatisfied. Baraboo, Nov. 8, 1861. O. V. TROOP."
—The plaintiff having rested, Mrs. Taylor (formerly Ann Garrison), as a witness for the defendant, testified that she understood the brandy was to apply " on the claim of *Mr. Williams* —on the decree."

The defendant asked the following instructions to the jury, which were refused : " 1. If the defendants or either of them sold brandy, a spirituous liquor, to the plaintiff without paying a license therefor, and on such sale it was to be applied in some other way than on the decree and interest at 7 per cent., it cannot now be diverted from such purpose, and applied on the decree license ; it is an illegal transaction, and the law will

leave the application where the parties left it. * * 3. If the parties sold and delivered, and the plaintiff received, spirituous liquor on the decree, yet if they had no license, the same cannot be deducted from the amount due on the decree. 4. If the defendant promised to pay a greater amount of interest on the decree than 7 per cent., and not to exceed the rate allowed by law, and actually paid such excess of interest, such amount so paid will not, without the consent of the plaintiff, be applied on the decree, or the 7 per cent. interest upon it, but will be allowed by law to be applied as the parties applied it."

The court charged the jury "that the payments by the administrator to be applied upon the judgment, are to be so applied, estimating the judgment and interest at 7 per cent. The administrator, *Troop*, could make no contract for interest exceeding that amount, or for forbearance, that would bind the estate. If it was agreed and understood by the parties that the brandy should be applied upon the judgment, it was a good payment *pro tanto*. It is for you to find whether it was to be so applied, or upon some other consideration. No license would be necessary to sell brandy or other spirituous liquors to a creditor in payment of a debt." .

Verdict, that the decree had been fully paid. The court, on motion, made an order discharging said decree; from which the plaintiff appealed.

*John T. Clark* and *C. C. Remington*, for appellant:

1. The court erred in trying the motion by a jury. Sec. 6, chap. 132, R. S., is not applicable to such an issue. It should have been heard as an ordinary motion, or by a referee, under chap. 95, Laws of 1849, sec. 4 (R. S., p. 1055); *Meyer vs. Lent*, 16 Barb., 453. 2. The court erred in refusing to allow the plaintiff to prove that the payments made by the defendant, or some portions of them, were applied, by agreement of the parties, in payment of compound interest, and interest on the decree over and above 7 per cent. and not to exceed 12 per

cent., for the plaintiff's forbearance to enforce the decree. *Mosier vs. Chapin,* 12 Wis., 453. *Troop* was sued not only as administrator, but also in his individual capacity. If he could not bind the estate in the manner indicated, he could certainly bind himself. Wentworth on Executors, 306, n. 1; *Grier vs. Huston,* 8 Serg. & R., 402. There was nothing in the questions propounded to the witness Davis, which related to the defendant *Troop* as administrator. They pertained to him individually. 3. There is not a particle of evidence to show that the payments in question were from the funds of A. Garrison, deceased. From aught that appears to the contrary, they were made by *Troop* from his own funds, and the brandy was from his own cellar. Even if he had paid the plaintiff from the funds of the estate more than 7 per cent. interest on the decree, he could not, neither could any other person interested in the estate, annul the transaction, or apply the excess in some other way. 12 Wis., 453. 4. A license, under the statute, was just as necessary to enable a person to sell spirituous liquors to pay a debt, as for any other purpose. The law makes no distinction. A sale for that purpose was equally illegal and void as a sale for money. R. S., chap. 35, sec. 5. A party to this illegal transaction moves the court to obtain the benefit of his wrongful act. The court should refuse to assist him, when his motion would fail. 5. All the testimony in the case goes to support the claim of the appellant, except that of the defendant *Troop*, and his evidence is contradicted by the written stipulation on which the decree was rendered. This stipulation he executed in his individual capacity as well as in that of administrator. He was also contradicted by his own witnesses, Mr. and Mrs. Taylor, and by his own written bill given to the plaintiff when the brandy was delivered. 6. The decree was rendered February 13th, 1855, for $400. Interest at 12 per cent. to July 9, 1855, $19.47. Then paid, $100. Leavstill due, $319.47. Interest to the 15th Oct., 1860, at 12 per cent.; $201.88. From that time to 29th Nov., 1860, at 10 per

cent., $2.58. Then due, $523.93. Payment then made, $347. Leaving $176.93 now due on the demand, and seven per cent. interest thereon from the 29th of November, 1860.

*Abbott, Gregory & Pinney*, for respondents :

1. The issue was properly sent to a jury. R. S., p. 714, sec. 11 ; *Cooley vs. Gregory*, 16 Wis., 303. 2. The stipulation for a higher rate of interest than seven per cent. was merged in the judgment which was entered upon it. *Pierce vs. Kearney*, 5 Hill, 82, and cases cited on page 86. 3. The administrator had no power to enlarge the liability of the estate ; in fact he can make no contract that can bind the estate. This was conceded on the argument, and is supported by all the authorities. 8 Iredell, 500 ; 9 id., 273. It makes no difference that *Troop* was made a party in his own right, as well as in the character of administrator. This is a proceeding to shield the estate, and nothing more. The decree is against the land of the intestate, and *Troop* is in no way personally interested in the matter. His liability to the plaintiff should be tested in some other proceeding. 4. But it is claimed that *Troop* personally agreed to pay this increased rate of interest, that he has done so, and *pro tanto* the contract is executed. (1.) The first two receipts introduced, *upon their face*, show that the sums paid were applied upon the decree. There was no pretense of fraud or mistake here, and no effort or offer to prove any. Besides, the presumption is that the funds were paid from the estate ; and the law would apply the amount on the decree. (2.) The brandy was the property of the estate, and it was so known to be by *Williams*, for the bill of sale on its face discloses this fact.

*By the Court*, COLE, J. There does not seem to be any valid objection to the practice adopted in this case of referring the question, whether or not the decree had been paid, to a jury That was essentially a question of fact, to be considered and passed upon in this manner. This practice has been sanctioned

in the case of *Cooley vs. Gregory*, 16 Wis., 303; and the counsel for the appellant failed to show that it was wrong. in principle or could result in any injury to his client.

It was conceded upon the argument, that the administrator could make no contract for interest upon the decree exceeding the legal rate, which would be binding upon the estate ; that whatever might be the effect of such a contract upon the administrator personally, it could not affect the trust property. But notwithstanding this admission, that such a contract could not bind the estate, yet it is claimed, inasmuch as the administrator agreed to pay twelve per cent. interest and made various payments which were applied in payment of the increased rate, that the contract is executed and effect must be given to it. But there are difficulties in this view of the matter which cannot be overlooked. In the first place, it will be borne in mind that the agreement to pay twelve per cent. interest was contained in the stipulation made before the decree was entered. Waiving the question, whether the stipulation was not merged in the decree subsequently entered, it appears from the receipts of the two first payments, that those payments were applied on the decree; for such application is expressly stated thus to be made in those instruments. Now we can hardly presume that the parties applied any portion of those payments upon the agreements contained in the stipulation, when they say they were to be applied upon the decree. The administrator testifies that he consented to no such application of the payments; and although there was testimony given and offered which contradicted him upon this point, yet upon the whole evidence we are well satisfied that the parties made no application of the payments upon the said contract. Nor can we apply these payments to discharge any personal liability which the administrator may have incurred upon the stipulation. If he has incurred any such liability, the remedy is against him upon his contract. Obviously the property of the estate cannot be held liable for it in any manner. The

simple question presented here is, has the decree been satisfied? If it has, it should be discharged of record.

It appears that the administrator made a payment on the decree of one hundred and twenty dollars, which was paid in brandy. He had taken out no license under the statute to sell or traffic in ardent spirits, as it is contended it was necessary for him to do in order to make a valid sale. It is claimed that an administrator could not dispose of spirituous liquors, even to pay a debt or for any other purpose, without first obtaining the license required by law, and that if he did so, the transaction would be illegal, and no court would give any effect to it. Therefore, it is said, the value of the brandy should not be deducted out of the amount due on the decree. We do not think it would be a fair or proper construction of the excise law, to say that it required an administrator to obtain a license before he could sell or dispose of liquors belonging to his intestate. He is a person whose plain legal duty it is to sell property, collect and pay the debts and settle up the estate committed to his charge. In performing this duty and disposing of the spirituous liquors belonging to the estate, it is no more necessary for him to obtain a license, than it would be for a sheriff to obtain one before he could sell liquors taken upon an execution. It is further objected, that it nowhere appears that the brandy was trust property. But the bill of sale runs to "O. V. Troop, administrator of the estate of A. Garrison," and the presumption undoubtedly is, that it belonged to the estate. In selling their own property, men rarely describe it as the property of another, particularly in a case where they would likely be called upon to account for the proceeds.

Upon the whole record we are satisfied that substantial justice has been done in the cause, and that the order of the circuit court discharging the decree is correct.

The order is therefore affirmed.