AUERBACH, Appellant, vs. MARKS, Intervener, Respondent.

*December 15, 1896 — January 12, 1897.*

*Debtor and creditor: Fraud: Intervention: Consolidation of actions: Reference: "Special proceeding:" Immaterial error: Costs.*

1. Where an execution creditor is assured by his debtor, with the apparent corroboration of his brother-in-law, A., that the debtor is entirely solvent and abundantly able to go on with his business and pay his debts if the creditor will release levies already made, the agreement of the latter to release them in consideration, among other things, of the transfer to him of his choice of goods to a certain amount at prices to be fixed by him, is not fraudulent as to the debtor or his other creditors, so as to prevent such creditor from intervening in actions subsequently brought by A.

Auerbach vs. Marks.

against the debtor for the purpose of obtaining priority over A.'s levies on the ground that the release had been procured by fraud.

2. Where A. has procured several judgments against H. and issued separate executions and made levies thereunder, separate motions in each action by M. to have the proceeds of the sale in each case applied first to the payment of his judgments against H., on the ground that a release of his prior levies on the same property had been procured by the fraud of A. and H., were properly consolidated and referred to a referee for trial.

3. Such motions were special proceedings and should properly have been terminated by an order, but the entry in form of a judgment granting the relief which the intervener should have had by an order was an immaterial error which should be disregarded.

4. In the absence of a statutory provision for the allowance of costs in special proceedings, the amount recoverable is limited to the $10 motion costs given by sec. 2924, R. S.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed, except as to costs.*

August 6, 1894, the intervener, *Marks*, had judgments amounting to $1,281.40, and other claims which were in suit, against one Louis Hecht, and held the stock of merchandise of Hecht under levy of execution on the judgments and attachments in the suits. Hecht procured the assistance of the plaintiff, *Auerbach*, who was his brother-in-law, to aid in obtaining a release of the levy. To that end it was represented to *Marks*, in the presence of *Auerbach*, and without dissent from him, that Hecht was perfectly solvent, and owed but little aside from his indebtedness to *Marks;* that he owed *Auerbach* nothing; that his stock of goods was worth from $5,000 to $6,000; and that, if the levy could be released, he would be able to continue his business, and pay off his debts in the ordinary course of business. It was finally agreed in writing that Hecht's indebtedness to *Marks* was $1,706.40; that *Auerbach* would advance to *Marks*, for Hecht, $500; that Hecht would deliver to *Marks*, from the goods under the levy, $500 in

Auerbach vs. Marks.

value, to be selected by *Marks*, and at a value to be fixed by him; and to secure the balance of the debt to *Marks* by a judgment note payable September 5, 1894. And it was further agreed that, "only on the full performance of the foregoing by the party of the first part," *Marks* would release his levy; and that, "if the said Louis Hecht shall fail and neglect to perform his obligations, then the said judgments shall stand, and be in full force and effect as though these agreements had never been executed."

On the execution of this agreement and the receipt of the check of *Auerbach* for $500, *Marks* directed the release of the levy, and, at the solicitation of Hecht, postponed the delivery of the goods until the shades of night should cover the transaction, and so save the feelings of Hecht and the exposure of his condition to the public. When *Marks* went, in the evening, to have delivery of the goods, he found the sheriff again in possession of the store and goods,— this time under executions in favor of *Auerbach*, on judgments which had been entered during the time intervening since the release by *Marks* of his levy,— and *Marks* was not permitted to take any goods. *Marks* then directed the sheriff to sell under his executions. The goods were sold by the sheriff. Marks obtained an order requiring the money, the proceeds of the sale, to be paid into court, to abide the result of his motion to have it applied first to the payment of his judgments. *Auerbach* had three judgments and three executions. *Marks* made three several motions to have the proceeds of the sale on each separate execution applied to the payment of his judgments. The motions were based upon petitions. To each petition *Auerbach* made separate — but in substance the same — answer. The court consolidated the several motions, and referred the issue to a referee.

There was a trial before the referee, in which witnesses were sworn and testified. The referee found: That Hecht and *Auerbach*, " colluding and concerting together for the

purpose of inducing the said *Marks* to release his said executions and attachment levies, and for the further purpose of enabling the said *Auerbach* to levy upon the said goods and fixtures as soon as the *Marks* executions and attachments should be released, falsely represented to the said *Marks* that the said Hecht was solvent; that, in addition to his debt to *Marks*, he did not owe to exceed $1,200, and that he owed nothing to the said *Auerbach* except the $500 which the said *Auerbach* then advanced to him, to be paid to the said *Marks* under the agreement;" and that, if the levies of *Marks* were released, "Hecht would be enabled to continue his business, and pay off his debts in the usual course of business." And "that all of said representations were wholly false, and were then and there known to the said Hecht and to the said *Auerbach* to be false," and that *Marks* released his levies in consequence of his reliance upon these false representations and promises. The referee also found, as a conclusion of law, that *Auerbach* was estopped, by his participation in the fraudulent representations, from claiming priority, by his levies, in the proceeds of the sale of the goods, and that *Marks* is entitled to the first lien thereon, to the amount of his three judgments, with interest and costs.

The report of the referee was confirmed by the court. On this report a formal judgment was entered, in favor of *Marks* against *Auerbach*, for the amount of his three judgments, with interest and costs taxed at $160, and that the residue be paid to *Auerbach*. *Auerbach* objected to the taxation of costs, and appealed from its allowance. From the judgment entered, *Auerbach* appeals.

For the appellant there was a brief by *A. Huebschmann*, and oral argument by *F. J. Lenicheck*.

For the respondent there was a brief by *Charles L. Aarons* and *Felker, Goldberg & Felker*, and oral argument by *Mr. Aarons* and *Mr. B. M. Goldberg*.

NEWMAN, J.   It cannot be seriously questioned that the petitions on which the respondent's motions were based state facts sufficient to warrant the relief sought by the motions. Nor is it doubtful that the evidence amply supports the findings of the referee.   So the findings cannot be disturbed on such grounds.  *Briggs v. Hiles*, 87 Wis. 438.

But the appellant urges that the court erred "in consolidating the proceedings and referring the issue to a referee." This is based principally on the contention that the petitions did not state facts sufficient to warrant an intervention, or to furnish grounds for the relief sought.   This is, in turn, based chiefly upon the claim or assertion that the contract "shows fraud upon the part of *Marks*, as against Hecht and the creditors of Hecht."   It is said that the fact, alone, that Marks was to have his choice of goods, at a price to be fixed by himself, is the clearest proof of fraud, as against other creditors of Hecht.   Of course, this contention altogether overlooks the fact that *Marks* did not know that there were other creditors of any considerable amount, but, on the contrary, was assured by Hecht, with *Auerbach's* apparent corroboration, that Hecht was entirely solvent, and abundantly able to go on with his business and pay his debts when the obstruction of these executions should be taken out of his way.   It is said, too, that this agreement is grossly unequal and unfair on its face, and out of the usual course of business, and should not be enforced.   Very likely the agreement would not be enforced literally, so as to work an injustice, by a court of equity, while, if the respondent should, in good faith, fix fair prices upon the goods selected by him, that might put another face upon the matter.   But that is unimportant.   No one is proposing to enforce it.   *Marks* repudiates it.   He claims that the promise was made only to his ear, with the intention that it should be broken to his hope, and that he was in fact beguiled of his levy by its delusion.   And so the referee virtually found.

No legal or practical objection is perceived to the consolidation of the several motions into one. The power to consolidate actions or motions, in a proper case, is inherent in the court, to prevent a multiplicity of actions, to the distress of litigants and the fruitless consumption of the time of the courts. The practical effect of such consolidation is to change the mode of trial or hearing, so that several cases or motions are disposed of by one trial or hearing.

It was proper practice to form an issue, and refer it to a referee for trial. The referee's report was a sufficient basis for a decision of the motion. *Cooley v. Gregory*, 16 Wis. 303; *Williams v. Troop*, 17 Wis. 463; *McDonald v. Falvey*, 18 Wis. 571; *Gaynor v. Blewett*, 85 Wis. 155; *Ellis v. S. W. Land Co., ante*, p. 531.

It does not seem to have been proper practice to enter a formal judgment on the referee's report. The proper remedy was an order. Every ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, or the redress or prevention of a wrong, is denominated an action. R. S. sec. 2595. Every other remedy is a special proceeding. R. S. sec. 2596. The final determination of the rights of the parties, *in an action*, is denominated a judgment (R. S. sec. 2882), while every direction made in writing, not included in a judgment, is denominated an order (R. S. sec. 2812). It is plain that this proceeding, under the common practice and understanding, was neither an action at law nor a suit in equity. It must therefore be a special proceeding, within the statute definitions. It should properly have been terminated by an order. But the respondent obtains by the judgment the same relief which he should have had by an order. The difference is mainly a mere matter of form and definition, not affecting the substance of the thing intended.

The respondent was allowed the full amount of his judg-

ments, including interest up to the time of their payment. One can hardly imagine ground for criticism in that. That is just what he should have realized if he had not released his levy. But costs are a creature of the statute. They cannot be allowed by the courts in cases not provided for by statute. The statute provides for the allowance of costs, generally, in actions. No such provision is made for their allowance in special proceedings. They are allowed in such proceedings only when specially provided for by some statute. Costs on motions are given by sec. 2924, R. S. They are limited to $10. Respondent's recovery of costs should have been limited to that sum.

*By the Court.*— The order of the circuit court is affirmed, except as to costs, and as to costs it is reversed. The cause is remanded, with direction to allow the respondent $10 costs. The appellant is to pay the fees of the clerk of this court. Neither party is to have costs of the appeal.