## KING v. LITTLEPAGE et al.
### No. 4622.

Court of Appeal of Louisiana. Second Circuit.
March 29, 1934.

W. F. Pipes, of Monroe, and V. M. Mouser, of Columbia, for appellant.

Hudson, Potts & Bernstein and Madison, Madison & Fuller, all of Monroe, for appellees.

DREW, Judge.

Under a judgment rendered in the case of Southland Securities Company, Incorporated, v. Lavinia McGuire Littlepage, No. 18151 on the docket of Ouachita parish, La., the clerk of court in and for Ouachita parish issued on September 23, 1932, an alias writ of fieri facias addressed to the plaintiff herein, the sheriff of Caldwell parish, La., commanding him to seize property of the judgment debtor situated in Caldwell parish and to sell same to satisfy said writ; that on September 26, 1932, petitioner executed said writ by seizing and taking into his possession a DeSoto sedan automobile, the property of the judgment debtor, who was then living in Caldwell parish, and, after due and legal delays, advertised the automobile for sale, the sale to take place on October 22, 1932.

On October 21, 1932, the judgment debtor secured a temporary restraining order enjoining the sale of said automobile and filed a bond for said restraining order, after which her attorney, William Mecom, called at the office of the sheriff and requested that he surrender the automobile seized under said alias writ, and was advised that the automobile could not be released because the restraining order bond did not give him that right. After the sheriff had gone home to his noonday meal, said attorney called at the sheriff's office and made a similar demand on the deputy sheriff, and the release was again refused. Then the said Mecom called the sheriff over the telephone and advised him that he had made bond for the release of the seized automobile and, after assuring the sheriff that he had secured an order from the court and filed a bond for the release, the sheriff authorized the release of the automobile. Upon his return to the office soon after the conversation over the telephone, the sheriff investigated and to his surprise found that no such bond, as attorney Mecom had assured him, had ever been filed nor had any order of court been given for same; that he then got in touch with said attorney and called his attention to the fact that no bond for the release of the automobile had been given and called upon the said Mecom to return to him at once the automobile seized under said alias writ, and was assured by Mecom that he would return it to petitioner's possession immediately. Instead of returning the car, the husband of the judgment debtor drove it to Monroe, in Ouachita parish, where it was seized the next morning in suit of H. M. McGuire v. Lavinia McGuire Littlepage, No. 21542 in the district court of Ouachita parish. The restraining order secured by the judgment debtor has since been dissolved with damages for the illegal issuance of same.

Plaintiff filed this suit alleging the above facts, and further alleged:

"* * * That H. M. McGuire is the paternal uncle of Lavinia McGuire Littlepage, and the said H. M. McGuire was cognizant and aware of the seizure under said alias writ of fieri facias of the property of Lavinia McGuire Littlepage by petitioner in Caldwell Parish at the time he caused the writ of sequestration to issue in Ouachita Parish under which the same automobile was seized; and the said H. M. McGuire knew that said automobile had been wrongfully and illegally obtained from your petitioner at the time of and before he sued out said writ of sequestration.

"11. Petitioner avers that the defendant in writ, Lavinia McGuire Littlepage, obtained the seized DeSoto automobile from him by misrepresentation and misstatement of facts on the part of her attorney; and had it not been for such misrepresentations and misstatements of facts, petitioner would not have parted with the possession of the automobile seized by him under the writ aforesaid.

"12. Petitioner further avers that the plaintiff in the above named suit, H. M. McGuire, and the defendant, Lavinia McGuire Littlepage, conspired with the said William Mecom, attorney, to misrepresent to petitioner a condition of facts concerning the giving of the bond which did not exist and that by such improper means, illegally and unlawfully obtained from petitioner the seized property above described, and pursuing their conspiracy to deprive petitioner of the possession of said property, the defendant, Lavinia McGuire Littlepage, immediately after securing possession of the DeSoto automobile aforesaid, drove it into Ouachita Parish where she had it seized by her uncle, H. M. McGuire, the following morning, under a chattel mortgage note he held which was recorded only in Ouachita Parish, Louisiana.

"13. Petitioner further avers that inasmuch as H. M. McGuire and Lavinia McGuire

Littlepage were aware of the seizure of said DeSoto automobile that was pending in Caldwell Parish, and having by illegal and unlawful means obtained the possession of it for the purpose of driving it into Ouachita Parish and having it there seized, that the seizure in Ouachita Parish under such circumstances and under the facts herein set out are in conflict with the seizure that was made by your petitioner and is subordinate to it, and your petitioner is entitled to an order of this court ordering the said DeSoto automobile returned to Caldwell Parish and to petitioner's possession where it might be sold under said alias writ of fieri facias according to law, and to have the seizure of it in Ouachita Parish dissolved and declared null and void.

"14. Petitioner avers that H. M. McGuire is a resident of Ouachita Parish, Louisiana, and Lavinia McGuire Littlepage is a resident of Caldwell Parish, Louisiana. * * *

"16. Petitioner now avers that in suit No. 21542, H. M. McGuire v. Lavinia McGuire Littlepage on the civil docket of this court, H. M. McGuire sequestered the above described automobile; that petitioner filed an intervention setting out all the facts alleged herein, particularly the prior seizure of said automobile under the aforesaid alias writ of fieri facias; that H. M. McGuire, plaintiff, and Lavinia McGuire Littlepage, defendant, answered petitioner's intervention; that said intervention was set for trial, and on the day set, counsel for H. M. McGuire filed a motion for a continuance on the grounds that the cause was not at issue as between plaintiff and defendant; that the attorney for H. M. McGuire could have defaulted the case on the same day, the day of the trial being a rule or motion day under the Rules of this court, but said attorney refused to put the case at issue, and consequently, a continuance was granted. * * *

"18. Petitioner fears that the plaintiff, Southland Securities Company, Incorporated, in writ might attempt to hold him responsible for letting said DeSoto automobile get out of his possession and might attempt to hold petitioner liable for depreciation as a result of its being used by the present appointed keeper; and as your petitioner is entitled to the possession of said automobile, a writ of judicial sequestration should issue herein, ordering the Sheriff of Ouachita Parish, Louisiana, to take into his possession and to keep the property in dispute, namely, one DeSoto sedan automobile, motor number CK 21226 B, serial number KP 841 S, in this suit until after the decision of this cause and to keep said property safely so that it might not be used and its value deteriorated."

He prayed for a writ of judicial sequestration, which was issued, and, after trial, for judgment recognizing and maintaining the seizure made by petitioner in Caldwell parish and decreeing the seizure of the same automobile made in Ouachita parish to be null and void, and ordering the sheriff of Ouachita parish to surrender the car to plaintiff in order that he might advertise and sell same under the alias writ.

H. M. McGuire filed a motion to dissolve the judicial sequestration for the reason that the property sequestered was at the time in the custody and under the control of the court, by virtue of a writ of sequestration issued in the suit of H. M. McGuire v. Lavinia McGuire Littlepage.

Mrs. Littlepage answered the petition of plaintiff admitting the seizure by plaintiff in Caldwell parish; that she is a resident of Caldwell parish; that she secured a restraining order, as alleged by plaintiff, and that the automobile was surrendered and released to her; that the car was removed from Caldwell parish to Ouachita parish and seized by her uncle, H. M. McGuire, the following morning. She admitted that the car seized by plaintiff in Caldwell parish is the same identical car seized by her uncle in Ouachita parish; and she admitted the allegations in regard to the intervention of plaintiff in suit of H. M. McGuire v. herself, and McGuire's failure to carry the case to a conclusion. All other allegations of the petition are denied.

H. M. McGuire answered denying all allegations as to conspiracy on his part and admitted the different seizures.

Milton Coverdale, sheriff of Ouachita parish, answered, his answer being practically the same as the other defendants, except that he admitted that the other defendants were cognizant and aware of the seizure under the said alias writ by petitioner in Caldwell parish, La., at the time H. M. McGuire caused the writ of sequestration to issue in Ouachita parish, and that H. M. McGuire knew that the automobile had been wrongfully and illegally obtained from petitioner at the time of and before he sued out the said writ of sequestration.

The motion to dissolve the judicial sequestration was overruled by consent and the case was tried on its merits, resulting in judgment for defendants, dismissing plaintiff's demands and dissolving the writ of judicial se-

questration. From this judgment, plaintiff has appealed.

On May 9, 1930, Lavinia McGuire Littlepage executed a chattel mortgage on the automobile in question in favor of her uncle, H. M. McGuire, for the sum of $600. This mortgage was recorded in the chattel mortgages of Ouachita parish, but was not recorded in Caldwell parish. The note for $600 was made payable twelve months after date. The Southland Securities Company, Incorporated, secured a judgment in Ouachita parish against the same Mrs. Littlepage in the sum of $233.36, with 8 per cent. per annum interest from October 30, 1929, until paid, plus 25 per cent. additional as attorney's fees and for costs. Some time thereafter, Mrs. Littlepage moved to Columbia, in Caldwell parish, where she established her domicile. On September 23, 1932, the Southland Securities Company, Incorporated, had issued an alias writ of fieri facias addressed to plaintiff, the sheriff of Caldwell parish, who, acting under said writ, seized and took into his possession the automobile owned by Mrs. Littlepage and stored same in Traylor's Garage, at Columbia, La., in Caldwell parish. After the legal delays required by law, the property was advertised for sale for October 22, 1932. On October 21, 1932, Mrs. Littlepage and her husband employed William Mecom, attorney at Columbia, who filed suit for them asking for an injunction against the sale and secured a temporary restraining order and filed bond for said order, after which Mecom demanded the release of the car under said bond, which demand was refused by the sheriff who informed Mecom that he would not release the car until he had secured an order from the court and had furnished a forthcoming bond. This occurred on the morning of October 21, 1932. After plaintiff, the sheriff, had gone home for his noonday meal, Mecom again demanded of the deputy sheriff that the car be released and was met with the same refusal. He then telephoned the sheriff who was at his home. The uncontradicted testimony of the sheriff is the best explanation as to what was said over the telephone; it is as follows:

"A. * * * At twelve o'clock, while I was at home for lunch, Mr. Mecom called me and said he wanted to get the car. I told him, 'Why, Bill'—I call him Bill—'I haven't got any bond, you cannot get the car. The car won't be sold tomorrow but you cannot take possession of the car'. He says, 'I have got a bond fixed by the court to have the car released'. After talking to him I says, 'If you guarantee me you have got the bond—if you say you have, you can take the car on but the car has got to be here tomorrow. I don't know what might transpire'. He says, 'I will guarantee you I got the bond for the release of the car, signed by the court. Order from the court.' I told him to take the car on if that's a fact. * * *

"After I went back to the office and looked up the record I found no bond there. I went to his office and his father informed me he came to Monroe to a ball game. I called Mr. Banister to get him to go to the ball game and get Mr. Mecom on the phone. He got Mr. Mecom to the phone about 2:30, and I told him I didn't have the bond for the car like he told me. He says, 'I was just mistaken'. I says, 'You bring the car back to Columbia.' He told me he would come on back and see about it. About 9:30 that night Mr. Mecom, Mr. Littlepage and Mrs. Littlepage come to the office.

"Q. Defendant in this suit? A. Yes. And I believe about the first word Mrs. Littlepage said is, 'Well, I believe I am about to get you in trouble'. I says, 'Yes, I think so'. She says, 'I haven't never got anybody in trouble and am not now. If this is going to get you in trouble I will bring it back'. I says, 'That is the way to do. It was obtained through misrepresentation.' Mr. Mecom says —first asked me—'If I bring the car back will it be sold?' I says, 'No, not tomorrow'. But Mr. Littlepage says he was working on some hay and couldn't come back. Mr. Mecom and myself both spoke up and said we would see that she got back to Monroe. * * *

"He (Mecom) told me he had a release bond. I told him when he first started talking, 'Bill, the bond you made is for the restraining order, stopping the sale tomorrow'. He said he had a bond for the release of the car and after talking to him, of course, he was an attorney there, I finally told him, 'If you have got that, Bill, of course you can take the car on'. He says, 'I guarantee to you I got it. You will find it just that way. I would not misrepresent it.'"

After the conversation on the telephone, plaintiff telephoned the Traylor Garage and authorized the release of the car, acting solely upon the statements made to him over the telephone by attorney Mecom, who was representing Mrs. Littlepage. Immediately after its release, Mr. Littlepage, the husband of the owner of the car, drove it to Monroe, in Ouachita parish, and left it on a vacant lot just opposite the office of H. M. McGuire, the uncle of Mrs. Littlepage. Mr. Littlepage re-

turned to Columbia that night, but borrowed a car from Manning McGuire, brother of H. M. McGuire, to make the trip. The next morning he returned to Monroe and H. M. McGuire filed suit by ordinary process on his chattel mortgage note and had the car sequestered. He then had Mrs. Littlepage's mother appointed keeper.

Up to this point, we have the following true facts: The car was legally seized by the sheriff of Caldwell parish, and the release of the corporeal possession of the car by the sheriff to the judgment debtor was secured by misrepresentation and falsehood, amounting to fraud. The car was taken out of the jurisdiction of the sheriff of Caldwell parish for no other reason than to prevent the sheriff from repossessing it corporeally. There can be no doubt as to this fact, when we read the testimony of Mr. Littlepage, who drove the car to Monroe. Therefore, if it were not for the sequestration, the issuance of which was secured by H. M. McGuire, a disposition of the case would be simple. We have some doubt as to the legality of the seizure caused by H. M. McGuire and whether or not it would prime the seizure made in Caldwell parish, even though he, Mecom, was in good faith and not a party to the conspiracy to perpetrate fraud on the sheriff of Caldwell parish. However, under our finding of fact, it is unnecessary for us to pass on this question. We are convinced that H. M. McGuire was not in good faith and was a party to the fraud. He well knew that his niece had removed from the parish of Ouachita to Caldwell parish and had taken the car with her. He knew that the car had been seized in Caldwell parish by the Southland Securities Company, Incorporated, for, on cross-examination, he testified that he knew the car was under seizure in Caldwell parish and that on the day Mr. Littlepage and his wife sued out the injunction and restraining order (the day before it was to be sold), Mr. Littlepage had in his possession a copy of the chattel mortgage and the chattel mortgage note held by McGuire against the car. During the cross-examination the following questions were asked and answered:

"Q. It is a fact, isn't it, Mr. McGuire, that at the time you came to my office and told me you were going to do everything in your power to defeat the seizure of this automobile by Sheriff King, that Mr. Joe Littlepage, husband of Mrs. Lavinia McGuire Littlepage, was with you? A. Yes, sir.

"Q. And you and Mr. Littlepage were actively conspiring together to find some means to defeat the seizure at Columbia were you not? A. I was. On the same basis that you would or any other man would."

He further testified that he found out the automobile was in Monroe when he saw it on the vacant lot just opposite his office; that he was in his office at the time and Mr. Littlepage, who drove the car to Monroe, was also in his office. He claims to have had no advance notice that the car was in Monroe. Immediately after discovering it on the vacant lot, he went to his lawyer and had it seized as soon as possible. He made two trips to his lawyer's office and Mr. Littlepage went with him on one of the trips. When he was asked if his purpose in seizing the car was not to protect his niece, Mrs. Littlepage, rather than to collect his money, his answer was that he wanted to do both. He further testified on cross-examination as follows:

"Q. Did Mr. or Mrs. Littlepage either one tell you their conversation with Mr. King the night before you seized the car? (The conversation with Mr. King the night before was when Littlepage agreed to return the car to his corporeal possession the next day after having been informed of the fraud that had been perpetrated upon him.) A. I had not seen Lavinia.

"Q. Did Mr. Littlepage? A. I don't know. Mr. Littlepage was here until after I went up to get the papers out for this car. In fact I don't know who drove the car up here. I don't know whether the car was driven up by them or someone else. But when I saw the car I went to get the papers. I had no conversation about it."

It is unreasonable to ask the court to believe that Mr. Littlepage did not tell Mr. McGuire what had happened in Columbia the day and night before, when he knew the interest Mr. McGuire had shown in the matter. It is likewise unreasonable to believe that Littlepage did not call his attention to the fact that the car was in Monroe. It is not shown what other business Mr. Littlepage had in Monroe that particular morning nor what business he had in McGuire's office early that morning nor why he went to the lawyer's office with McGuire. It could not have been to the interest of Mrs. Littlepage or her husband to have the car seized and sold by McGuire, and what transpired after the seizure by McGuire makes it evident that the seizure was not to collect the money due McGuire under his chattel mortgage, but was entirely in the interest of Mrs. Littlepage, for, after her mother was appointed keeper,

she and her mother both used the car at their pleasure.

After McGuire filed his suit, the sheriff of Caldwell parish intervened alleging the same facts as are alleged in this suit. Mrs. Littlepage and McGuire both answered the petition of intervention, but Mrs. Littlepage did not answer the main demand. The case was fixed for trial at the request of intervener. On the day of trial McGuire, who was plaintiff in that suit, prayed for a continuance because there had been no answer filed to the main demand by Mrs. Littlepage and a continuance was granted. He refused to default the case and the case has never been tried. Intervener, finding himself so blocked from getting a hearing on his petition of intervention, then filed this suit.

It is admitted that the automobile was only worth at the time of trial $150, not enough to pay either claim against it. McGuire's chattel mortgage was more than one year past due. Nothing had been paid on it. The car was in constant use and daily decreasing in value, yet he had taken no action to collect his money or to protect his interests until after it was seized in Caldwell parish and the corporeal possession of same released by the sheriff of said parish, being induced by fraud perpetrated by the judgment debtor, and, we think, with the full knowledge of McGuire. Auerbach v. Marks, 94 Wis. 668, 69 N. W. 1001.

"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions, or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence." Dart's Revised Civil Code, article 1848. (See citations thereunder.)

The circumstances in this case are strong, consistent, and calculated to induce belief that a fraudulent intent existed in Mrs. Littlepage, as well as H. M. McGuire. This is all that is required in law.

We therefore find that H. M. McGuire conspired with Mrs. Littlepage to illegally and fraudulently secure the release of the corporeal possession of the automobile from the sheriff of Caldwell parish in order that McGuire might gain an advantage for himself and he in turn turn it to the advantage of Mrs. Littlepage, his niece, and such advantage as they would gain would be to the detriment and loss of the sheriff of Caldwell parish.

The judgment of the lower court dissolving the judicial sequestration for the reasons set out in said motion is correct; in all other respects it is erroneous and will be reversed. We therefore conclude that the seizure made by plaintiff in the case of Southland Securities Company, Incorporated, v. Mrs. Lavinia McGuire Littlepage, in Caldwell parish, La., is in effect and a valid seizure, and the sheriff of Ouachita parish is ordered to surrender the car now held by him under seizure in the case of H. M. McGuire v. Mrs. Littlepage to the sheriff of Caldwell parish; defendants to pay all costs of this suit.